618 S.E.2d 903

Jessie PETERSON and Vanessa Peterson, Appellants,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, CSX Transportation Inc., and Southco Sweeping and Maintenance, Co., Defendants,

of whom National Railroad Passenger Corporation and CSX Transportation, Inc., are, Respondents.

No. 26030.

Supreme Court of South Carolina.

Heard March 15, 2005.

Decided Aug. 22, 2005.

392

Stephen L. Brown, of Young Clement Rivers, of Charleston; and James R. Holland, of Wettermark, Holland & Keith, of Jacksonville, FL, for Appellants.

Charles Craig Young, of Young & Phillips, of Florence; and John C. Millberg, of Millberg, Gordon & Stewart, of Raleigh, NC, for Respondents.

William McBee Smith, of Smith & Haskel Law Firm, of Spartanburg, for Amicus Curiae The Association of American Railroads.

Stephen L. Brown, of Young Clement Rivers, of Charleston, James R. Holland, of Wettermark, Holland & Keith, of Jacksonville, FL, and Michael J. Warshauer, of Thomas, Thorton & Rogers, of Atlanta, GA, for Amicus Curiae The Association of Rail Labor Attorneys.

Chief Justice TOAL:

Jessie Peterson was injured while traveling on a train that derailed. Jessie and Vanessa Peterson (Appellants) brought the underlying action pursuant to the Federal Employer's Liability Act (FELA).[1] The trial court granted summary judgment in favor of Respondents, National Railroad Passenger Corporation (Amtrak) and CSX Transportation, Inc. (CSX). Appellants appealed. This matter was certified from the court of appeals pursuant Rule 204(b), SCACR. We affirm in result.

### FACTUAL/PROCEDURAL BACKGROUND

In August 2000, Peterson was working as a service attendant on a train that derailed in Lake City, South Carolina. CSX owns the line of track, and Amtrak owns the train.

A short time before the derailment, Ervin Lucky, an employee of Southco Sweeping and Maintenance Co. (Southco), fell asleep while operating a street sweeper on a nearby street. As a result, the sweeper ran through a stop sign, jumped a curve, crossed a small grassy area, and collided with the track's crossties. According to one of CSX's engineers, the impact of the sweeper knocked the track several inches out of alignment. The estimated speed of the sweeper at the time of the collision was forty-seven miles per hour.

Minutes after the collision, the train, with Peterson aboard, crossed the area where the sweeper hit the track's crossties. The train derailed. As a result Peterson was severely injured. Four eyewitnesses testified in deposition that no one had time to warn CSX or Amtrak before the train arrived.

Appellants claim that Respondents did not properly maintain the area of the track where the derailment occurred. Appellants further assert that, but for Respondents' negli-

---

1. 45 U.S.C. §§ 51–60 (2000).

gence, the sweeper would not have misaligned the track to such a degree that the train would have derailed. In support of this argument, Appellants presented expert testimony that Respondents violated federal track safety standards and their own internal policies.[2] The trial court granted summary judgment in favor of Respondents. Appellants appealed.

The following issues have been raised on appeal:

I. Did the trial court err in granting Respondents' motion for summary judgment?

 A. Did the trial court err in ruling that Appellants' claims were preempted by federal law?

 B. Did Respondents violate federal law?

 C. Did the trial court err in striking the expert testimony?

II. Did the trial court err in awarding costs to Respondents?

LAW/ANALYSIS

## I. Summary Judgment

Appellants argue that the trial court erred in granting summary judgment in favor of Respondents. We disagree.

 Actions brought pursuant to FELA are governed by federal standards. *Rogers v. Norfolk S. Corp.*, 356 S.C. 85, 91, 588 S.E.2d 87, 89 (2003). Under the federal standard, a trial judge must view the evidence in the light most favorable to the non-moving party. *Id.* However, unlike the state standard, the federal standard requires this Court to determine whether the evidence is of such a quality and weight that reasonable and fair-minded jurors, in the exercise of impartial judgment, could return a verdict in favor of the non-moving party. *Id.* at 92, 588 S.E.2d at 90 (citing *Crinkley v. Holiday Inns*, 844 F.2d 156, 160 (4th Cir.1988)). To avoid summary judgment, the evidence must demonstrate that the employer's negligence [3] "played any part, even in the slightest, in produc-

---

**2.** CSX's internal track maintenance policy is outlined in a manual entitled "The Maintenance Way of Instructions."

**3.** FELA claims are evaluated as if they were common law negligence claims. *Rogers*, 356 S.C. at 91, 588 S.E.2d at 90.

ing the injury . . . for which damages are sought." *Id.* (citing *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).

## A. Preemption

■ Appellants argue that Respondents' deviation from their own internal track maintenance policies is relevant to the issue of negligence. But Respondents argue that the policies are not admissible because they are preempted by federal law. We agree with Appellants.

The trial judge ruled that the standard of care is established by federal law [4] and granted summary judgment on the basis of, among other things, preemption. Based on this ruling, the trial court did not consider evidence of Respondents' deviation from their own internal track maintenance policies. We agree that the standard of care is established by federal law; however, we do not agree that this prevents the court from considering evidence that Respondents violated their own internal polices.

Although federal regulations provide the standard of care, Respondents' deviation from their own internal policies is, nevertheless, admissible as evidence that Respondents deviated from that standard of care. *Cf. Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 150 (8th Cir.1982) (holding that when the evidence shows that the railroad customarily does not enforce a safety rule, the jury is entitled to consider whether that custom constituted negligence and whether it caused, in whole or in part, the plaintiff's injury). Accordingly, we hold that the trial court erred when it held that Appellants' claims were preempted by federal law. Further, we hold that evidence of Respondents' deviation from their internal maintenance policies is admissible to show the element of breach. *See Rogers*, 356 S.C. at 91, 588 S.E.2d at 90 (FELA claims are evaluated as if they were common law negligence claims, and therefore the plaintiff is responsible for demonstrating each element of negligence); *See also Assoc. Mgmt., Inc. v. E.D. Sauls Constr.*

---

4. The Federal Railroad Administration, an agency under the Department of Transportation, promulgated regulations that provide for proper maintenance of railroad tracks. The relevant regulations are found under 49 C.F.R. § 213.103 and 49 C.F.R. § 213.133.

*Co.,* 279 S.C. 219, 221, 305 S.E.2d 236, 237 (1983) (evidence that tends to establish or to make more or less probable some matter at issue and to bear directly or indirectly thereon is relevant and admissible).

## B. Violation of Federal Law

■ Appellants argue that Respondents violated federal law by not properly maintaining the tracks. We disagree.

The Federal Railroad Administration regulations governing the maintenance of ballast provide:

Ballast; general

Unless it is otherwise structurally supported, all track shall be supported by material which will—

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103.

We find no evidence in the record that the ballasts at the site of the derailment were inadequate to "maintain proper alignment" under normal conditions. Moreover, we do not interpret this provision to mean that the ballast must be maintained in such a way so as to prevent misalignment in situations where the track is struck with great force. Therefore, we find that Respondents did not violate the regulation.

## C. Expert Testimony

■■ Appellants presented affidavits and deposition testimony of three experts who opined that, because the ballast around the derailment site had eroded, the track was susceptible to being knocked out of line. The trial court ruled that this evidence was inadmissible. We disagree. However, we hold that, although the evidence was admissible, the evidence did not sufficiently establish that Respondents' acts or omissions caused or contributed to Appellants' injuries.

## 1. Admissibility

The admission of evidence is within the sound discretion of the trial judge, and absent a clear abuse of discretion amounting to an error of law, the trial court's ruling will not be disturbed on appeal. *Hofer v. St. Clair*, 298 S.C. 503, 513, 381 S.E.2d 736, 742 (1989). Evidence that tends to establish or to make more or less probable some matter at issue and to bear directly or indirectly thereon is relevant and admissible. *Assoc. Mgmt., Inc. v. E.D. Sauls Constr. Co.*, 279 S.C. 219, 221, 305 S.E.2d 236, 237 (1983).

In general, courts allow experts to testify if they are more qualified in the field than a juror on the subject. *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997). An expert witness may state an opinion based on facts not within his first-hand knowledge, and may base his opinion on information, whether or not admissible, made available to him before the hearing if the information is of the type reasonably relied upon in the field. Rule 703, SCRE; *Dawkins v. Fields*, 354 S.C. 58, 64, 580 S.E.2d 433, 436 (2003). Defects in an expert witness' education and experience go to the weight, not the admissibility, of the expert's testimony. *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598.

In the present case, Appellants presented the testimony of three experts. First, Donald Bowden (Bowden), a former CSX Roadmaster,[5] opined that Respondents did not comply with CSX's internal maintenance policies. In addition, Bowden testified that federal regulations do not provide "detailed specifications for ballasts," and "insufficient or substandard ballast is not always considered a direct violation of federal regulations." But if Respondents had followed their own internal policies, he opined, "the street sweeper would not have struck the end of the crossties." [6]

---

5. In his affidavit, Bowden stated that he became familiar with the applicable regulations and Respondents' internal policies concerning track inspection and maintenance during the time he was employed as a Roadmaster in CSX's engineering department.

6. Bowden also noted that numerous crossties were in disrepair at the site. But he conceded that his opinion was based solely on a photo-

Appellants also presented the testimony of Ray Whitehurst (Whitehurst), a former CSX machinery operator. In his affidavit, Whitehurst stated that he frequently operated a backhoe around railroad tracks, and that if the track had been properly ballasted, the track would have been able to "withstand a lateral blow from heavy machinery . . . at moderate to slow speeds [7] without (the track) coming out of alignment." In addition, Whitehurst opined that "[h]ad there been proper ballast to CSX standards, the tires of the street sweeper would have ridden up over the crossties and impacted the rail, rather than the ends of the crossties."

Finally, Appellants presented the testimony of H.T. Paton, who is a railroad safety consultant and former railroad engineer. He opined that if the ballast been properly maintained, the sweeper would not have struck the crossties, causing the train to derail.

After considering this evidence, the trial court ruled that the expert testimony was inadmissible because it was speculative and the experts were "not qualified to render such opinions, nor [had] they conducted any testing, studies, calculations, or any analysis whatsoever." We disagree and find that Appellants' experts had the necessary experience and facts to give an opinion as to whether Respondents were negligent. The experts' lack of first-hand knowledge, which could have been obtained by an on-site investigation, goes to the weight of the testimony, not its admissibility. Therefore, the trial court erred in striking the testimony.

## 2. Sufficiency of Evidence

Appellants argue that the expert testimony presented shows that if the tracks had more ballast, the train would not have derailed. We disagree.

The Appellants rely on expert testimony to establish the element of causation. Appellants' experts opined that if Re-

---

graph, and therefore he was unable to determine whether the applicable federal regulations were violated.

7. Ray Whitehurst did not testify how fast he considered "moderate to slow speeds" to be. But Bowden, Appellants' other expert, noted in his deposition that the estimated speed of the sweeper at the time it struck the crossties was forty-seven miles per hour.

spondents had put more ballast at the derailment site,[8] then the sweeper would have jumped the crossties instead of colliding with them. The experts also opined that if the track had a six-inch ballast shoulder,[9] then the track would have misaligned to a lesser degree; however, they have not provided how much less.

None of the experts were willing to say that, had Respondents maintained the ballast in accordance with their own internal policies, such an impact would not have affected the rail to a degree that the train would have derailed. Moreover, none of the experts testified as to the amount of force necessary to knock an identical track with a six-inch ballast shoulder out of alignment. In fact, no testimony was presented that the track would maintain the necessary alignment had the sweeper jumped the crossties and struck the rail.

Accordingly, while evidence may exist that Respondents did not comply with their own internal safety policies, there is no evidence that this noncompliance caused the train to derail. Instead, the evidence overwhelmingly shows that the cause of derailment was the impact of the sweeper.

Accordingly, we hold that the expert testimony, while admissible, fails to provide that failure to maintain the ballast in accordance with Respondents' own policies caused or contributed to the train's derailment. *See Rogers,* 356 S.C. at 90, 588 S.E.2d at 89 (to recover under a FELA, a plaintiff must prove the common law elements of negligence: duty, breach, causation, and damages). Therefore, we hold that the trial court did not err in granting summary judgment in favor of Respondents.

## II. Costs

■■■ Appellants argue that the trial court erred in awarding deposition costs. We disagree.

---

8. CSX's internal policies provide that ballasts are to be even with the top of the tie. In addition the ballast shoulder should extend six inches from the end of the tie to the edge of the slope of tangents and the inside of the curves, and twelve inches on the outside of curves.

9. This is the height suggested by CSX's internal maintenance policies entitled "Maintenance Way of Instructions 105–04: Instructions for Track Inspections, Section II Procedures, Subpart E, Notes 5 and 6."

An appellate court will not overturn a trial court's decision to award costs unless there has been an abuse of discretion. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). Costs may be imposed on the losing party when permitted by statute. *Oliver v. S.C. Dep't of Highways & Pub. Transp.*, 309 S.C. 313, 318, 422 S.E.2d 128, 131 (1992). A trial judge has broad discretion to award costs to the prevailing party. S.C.Code Ann. §§ 15–37–10 and 15–37–20 (1976). Once a trial judge awards costs to the prevailing party the clerk shall insert in the judgment costs of "the fees of witnesses" and "the reasonable compensation of commissioners in taking depositions." S.C.Code Ann. § 15–37–40 (1976). In addition, the Rules of Civil Procedure recognize that the prevailing party shall be allowed costs per a trial court's ruling. Rule 54(d), SCRCP.

Because summary judgment was proper, we hold that the trial court did not abuse its discretion by awarding Respondents' costs.

### Conclusion

For the foregoing reasons, we affirm in result, holding that the trial court did not err in granting summary judgment in favor of Respondents because Appellants have failed to establish sufficient evidence that Respondents caused or contributed to Appellants' injuries.

MOORE, WALLER and BURNETT, JJ., concur. PLEICONES, J., concurring in result only.