682 S.E.2d 14

**Diane M. TRACY, Respondent,**

v.

**Preston TRACY, Appellant.**

No. 4563.

Court of Appeals of South Carolina.

Submitted May 1, 2009.

Decided June 12, 2009.

Elizabeth J. Saraniti, and Virginia L. Moore, of Surfside Beach, for Appellant.

James P. Stevens, Jr., of Loris, for Respondent.

SHORT, J.

Preston Tracy appeals the family court's denial of his Rule to Show Cause. Mr. Tracy argues the family court erred in failing to find Diane Tracy in contempt, allowing Ms. Tracy to enter into an Offer In Compromise (OIC) with the Internal

Revenue Service (IRS), and failing to award attorneys' fees and costs. We affirm.

## FACTS

On January 17, 2007, after seven-and-a-half years of marriage, the Tracys divorced. The statutory ground for divorce was Ms. Tracy's adultery. The Final Order and Decree of Divorce contained the following language:

As to the tax liability for 2004 and 2005 tax years, the parties agree to file joint tax returns ... with accountant David Gatti preparing such returns. As to each tax year (2004, 2005 and 2006) Wife shall have 30 days within which to provide all necessary paperwork relative to her income and deductible expenses and shall review and execute such returns within five (5) days of notification from the accountant that such returns are complete.... Wife shall bear sole responsibility for the costs for preparing these returns and shall be solely responsible for any tax liability associated with these tax years.

. . .

Husband shall loan Wife $15,000 ... and such loan shall be secured along with her obligation to pay a portion of Husband's attorney's fees/costs, her obligation to reimburse Husband for her share of the tax liability for 2006 and her responsibility for 100% of the tax liability associated with 2004 and 2005 with a first mortgage against [her property].... The note and mortgage shall reflect an initial amount of $35,000 ($15,000 loan and $20,000 for attorney's fees/costs) and shall have a future advance clause securing her obligation as to her tax liability as specified above.

Additionally, the Order provided any violation "shall be considered Contempt of Court."

On May 16, 2007, Mr. Tracy filed a Rule to Show Cause, requesting the court require Ms. Tracy to show cause why she should not be held in contempt of court for noncompliance with the terms and conditions of the Final Order and Decree of Divorce. The family court found Ms. Tracy failed to comply with certain time limits set forth in the Final Order, specifically noting the requirement of filing the tax returns and forwarding the payment. Nevertheless, the family court

determined Ms. Tracy's noncompliance was not willful, and thus, did not hold her in contempt. Specifically, the court noted Ms. Tracy delayed her execution and forwarding of the tax returns because her two minor children's social security numbers were incorrect, depriving her of the deductions, and the correction took approximately four months to resolve. Thus, the court did not find her in willful contempt because the court believed she had a valid reason for requesting the corrections.

Addressing Ms. Tracy's noncompliance with the Order by not paying the 2004 and 2005 taxes, the family court noted she entered into negotiations with the IRS for an OIC. The court again found her conduct was not willful: "She signed the returns, obtained a mortgage for the funds necessary to pay off the obligations, contacted the taxing authorities, completed and filed the Offers in Compromise with the required partial payments and held the balance of the funds with an escrow agent." Moreover, the family court stated:

At the time the agreement was approved, [Ms. Tracy] was without funds to meet the financial obligations imposed; for she had to borrow money from [Mr. Tracy] to purchase the home. Subsequently, she obtained a mortgage and paid off [Mr. Tracy] with the balance of the funds placed in escrow. Her delay in obtaining the mortgage funds for the payment of the obligations was, in my opinion, not entirely her fault; for she had difficulty in obtaining the payoff amount from [Mr. Tracy] as to his existing mortgage. Her borrowing capacity is limited by her income and although she initially obtained funds, which she believe[d] to be sufficient to pay the obligations, this turned out not to be the case. For the actual tax amounts exceeded the figure contained on the spread sheet attached to the parties' agreement.

Additionally, the family court found Ms. Tracy's testimony credible, especially regarding her belief that the amount of tax liability she was assuming was contained on the spreadsheet attached to the parties' agreement, which was approximately $30,000, and the actual amount exceeded $40,000.

With regard to Mr. Tracy's lien status on Ms. Tracy's property, the family court stated it was difficult to understand because "once he was paid the funds owed, his lien status

became a non-issue." Finally, the family court dismissed the Rule to Show Cause, found Ms. Tracy was not in contempt, and authorized Carroll Padgett (Ms. Tracy's escrow agent) to disburse the funds for the OIC. Mr. Tracy moved for reconsideration and the family court denied his motion. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Wooten v. Wooten*, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005). However, despite our broad scope of review, we remain mindful of the family court's findings because it is the family court who observed the witnesses, and who was in a better position to evaluate the witnesses' credibility and assign comparative weight to their testimony. *Id.*

## LAW/ANALYSIS

### I. Contempt

Mr. Tracy argues the family court erred in failing to find Ms. Tracy in contempt for: (1) willful failure to provide payment to the IRS and respective state agencies when she forwarded the parties' joint 2004 and 2005 income taxes as required by the Final Order and Decree of Divorce; and (2) willful failure to provide him with a first mortgage on her property to protect his interest as required by the Final Order and Decree of Divorce. We disagree.

"A trial court's determination regarding contempt is subject to reversal where it is based on findings that are without evidentiary support or where there has been an abuse of discretion." *Henderson v. Puckett*, 316 S.C. 171, 173, 447 S.E.2d 871, 872 (Ct.App.1994). "An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support." *Townsend v. Townsend*, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct.App.2003).

A party may be found in contempt of court for the willful violation of a lawful court order. Before a party may be

found in contempt, the record must clearly and specifically show the contemptuous conduct. In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondent's noncompliance with the order. At the same time, we remain cognizant that "contempt is an extreme measure and the power to adjudge a person in contempt is not to be lightly asserted."

*Hawkins v. Mullins,* 359 S.C. 497, 501, 597 S.E.2d 897, 899 (Ct.App.2004) (internal citations omitted).

Section 63–3–620 of the South Carolina Code provides the penalties for an adult's violation of a court's order: "An adult who wilfully violates, neglects, or refuses to obey or perform a lawful order of the court, or who violates any provision of this title, may be proceeded against for contempt of court." S.C.Code Ann. § 63–3–620 (2008).[1]

■ Here, Ms. Tracy testified at length regarding her efforts to comply with the Final Order and Decree of Divorce. She stated she began attempting to obtain a mortgage the day after the Final Order and Decree of Divorce was entered. Ms. Tracy indicated she obtained a letter from the first company she sought a mortgage from stating it would not give her a mortgage because Mr. Tracy would not release a note with the payoff amount. Additionally, Ms. Tracy contended Mr. Tracy continually contacted the taxing authorities to complicate her attempts to resolve the situation.[2] His interference required her to constantly check with the agencies to ensure she was getting all the necessary information. As a

---

1. Section 63–3–620 was formerly codified as section 20–7–1350 of the South Carolina Code of Laws (Supp.2007).

2. An example of his interference was evidenced during his cross-examination. Ms. Tracy identified six letters from taxing authorities where Mr. Tracy changed the primary address from her home address to his home address. Specifically, Mr. Tracy testified: "I didn't change the address so that [Ms. Tracy] would not get any communications. I did talk to the IRS and I did inform them that mine was the primary social security number on [the return]." Additionally, Mr. Tracy contacted the IRS to inform them of the escrow account, seemingly in an effort to thwart the OIC acceptance. Ms. Tracy also testified Mr. Tracy called the tax agencies to inform them that she had enough money to pay the taxes in full.

result of his conduct, Ms. Tracy contended she had to hire an escrow agent, Carroll Padgett, to finally obtain the payoff amount and secure a mortgage. In response to Mr. Tracy's allegation Ms. Tracy paid personal debts before the tax liabilities, Ms. Tracy explained she had to pay the approximate $6,000 in personal debt before being qualified for the mortgage.

Additionally, Ms. Tracy explained she did not mail the payment with the tax returns to the IRS because she had not closed on the mortgage and did not have the money. Moreover, she stated she would have forwarded the funds with the returns if she had enough funds, but the estimate on the parties' agreement was incorrect. Ms. Tracy eventually obtained a $90,000 mortgage on her house to pay her obligations under the Final Order and Decree of Divorce.

After Padgett received the escrow funds,[3] he began paying the tax agencies. Ms. Tracy indicated she paid the 2006 taxes, but entered into an OIC with the IRS for the 2004 and 2005 taxes, and filed the OIC as quickly as she could.

With regard to the delay in filing the returns, David Gatti, Mr. Tracy's personal accountant, testified the taxes contained incorrect social security numbers for Ms. Tracy's children and it took him almost two months to correct the return.

Hence, the family court did not err in refusing to find Ms. Tracy in contempt for noncompliance with the Final Order and Decree of Divorce. While the record does contain evidence that Ms. Tracy did not comply with all of the time limits set forth in the Order, we find Ms. Tracy did not willfully violate, neglect, or refuse to perform the duties proscribed in the Order. Additionally, ample evidence in the record supports the family court's findings.

In addressing Mr. Tracy's contention that Ms. Tracy should have maintained Mr. Tracy's first lien status on her property until the tax liabilities are completely satisfied, we agree with the family court that his argument is difficult to comprehend. Once Mr. Tracy was paid the funds he was owed, his lien

---

**3.** Ms. Tracy first paid Mr. Tracy $35,000 for the $15,000 loan to purchase the house and $20,000 in attorneys' fees and costs, pursuant to the Final Order and Decree of Divorce. The remainder of the mortgage was placed in an escrow account to satisfy the tax liabilities.

status essentially became a non-issue because she no longer owed him money. Ms. Tracy has accepted responsibility and has taken appropriate measures to satisfy the tax liabilities through obtaining a mortgage of her own and entering into an OIC with the IRS. Accordingly, the family court properly found Ms. Tracy was not in contempt for noncompliance with the Final Order and Decree of Divorce.

## II. Offer In Compromise

Mr. Tracy argues the family court erred in allowing Ms. Tracy to enter into an Offer In Compromise with the IRS. Specifically, Mr. Tracy asserts the OIC does not protect him from liability for the assessed tax amount. We disagree.

"Before any action can be maintained, a justiciable controversy must be present." *Sloan v. Greenville County,* 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct.App.2003). "A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute." *Pee Dee Elec. Coop., Inc. v. Carolina Power & Light Co.,* 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); *see also Graham v. State Farm Mut. Auto. Ins. Co.,* 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995) (holding a justiciable controversy exists when a concrete issue is present, there is a definite assertion of legal rights, and a positive legal duty which is denied by the adverse party). "The concept of justiciability encompasses the doctrines of ripeness, mootness, and standing." *Sloan,* 356 S.C. at 547, 590 S.E.2d at 346. "In determining a ripeness issue under the 'case or controversy' requirement of Article III of the United States Constitution, federal courts use a two-factor test: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Waters v. S.C. Land Res. Conservation Comm'n,* 321 S.C. 219, 227–28, 467 S.E.2d 913, 918 (1996).

The language in the Final Order and Decree of Divorce gives Ms. Tracy the sole responsibility for any tax liability associated with 2004 and 2005. Nowhere in the document is Ms. Tracy restricted from entering into an OIC with the IRS to reduce the tax liability. Additionally, the IRS

accepted Ms. Tracy's OIC, and no evidence exists to indicate she has defaulted on her responsibilities. Moreover, this issue is not ripe for review because Mr. Tracy has not been exposed to any liability at this time as a result of Ms. Tracy entering into the OIC. Furthermore, any claim Mr. Tracy may have is contingent upon Ms. Tracy's nonpayment. Lastly, during the Rule to Show Cause Hearing, the family court specifically provided Mr. Tracy with the remedy of coming back before the court if Ms. Tracy defaulted on her tax obligations. Accordingly, the issue is not ripe for judicial decision and the parties suffer no hardship from withholding a decision.

### III. Attorneys' Fees and Costs

 Mr. Tracy alleges the family court erred in failing to award him attorneys' fees and costs stemming from Ms. Tracy's contempt. We disagree.

 "In a family court matter, '[t]he award of attorney's fees is left to the discretion of the trial judge and will only be disturbed upon a showing of abuse of discretion.' " *Abate v. Abate*, 377 S.C. 548, 555, 660 S.E.2d 515, 519 (Ct.App. 2008) (quoting *Upchurch v. Upchurch*, 367 S.C. 16, 28, 624 S.E.2d 643, 648 (2006)). "Under South Carolina law, the family court has jurisdiction to determine whether to award attorney's fees in a matter properly before it." *Id.*

Here, Mr. Tracy does not contend the family court abused its discretion in declining to award him attorneys' fees. Moreover, Mr. Tracy's issues were brought prematurely because he suffered no injury from Ms. Tracy's actions. Thus, the family court did not err in declining to award Mr. Tracy attorneys' fees and costs.

### CONCLUSION

Accordingly, the family court's order is

**AFFIRMED.**

WILLIAMS and LOCKEMY, JJ., concur.