575 S.E.2d 846

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**Michael MEEK and Angela Meek, Defendants,**

**Of Whom Angela Meek is the Appellant.**

**In the Interest of Cynthia Meek (DOB: 01–27–97) and Kaitlyn Meek (12–08–99) Minors under the age of 18.**

**No. 3570.**

Court of Appeals of South Carolina.

Submitted Oct. 8, 2002.

Decided Nov. 25, 2002.

Rehearing Denied Jan. 24, 2003.

---

Warren A. Kohn, of Columbia; for Appellant.

Montford Shuler Caughman, of Lexington; for Respondent.

Ann Sharry Keisler, of Lexington; for Guardian Ad Litem.

CONNOR, J.

Angela Meek (Mother) appeals the family court's decision to grant temporary custody of her two minor daughters to the South Carolina Department of Social Services (DSS). We reverse and remand.

## FACTS

On April 20, 2000, the Lexington County Department of Social Services sought an ex parte order granting it temporary emergency physical custody of the two daughters of Mother and Michael Meek (Father). The family court found that Father, while holding a firearm, threatened to kill one of the children. He then shot the firearm in the home while fighting with Mother. The family court also found Mother was not willing to leave the home to protect herself or the two girls. Accordingly, the family court granted temporary emergency

custody of the girls to DSS, finding probable cause existed to believe there was imminent and substantial danger to the life, health, or physical safety of the children.

The probable cause hearing was held on April 24, 2000, and the family court made a finding that probable cause existed to take the children into emergency protective custody. The family court awarded custody of the girls to DSS and ordered both Mother and Father to undergo psychological testing. The family court scheduled the merits hearing for May 24, 2000. However, the hearing was continued because no guardian ad litem had been appointed. The order granting the continuance noted a waiver of the thirty-five-day statutory period for the hearing.

The court conducted a merits hearing on August 2, 2000. Mother appeared at the hearing with her attorney, and the parties announced they had reached an agreement. DSS indicated that no agreement had been reached with Father, and a hearing would be held regarding him sometime in the future.

DSS announced to the family court the agreement reached with Mother. The parties agreed, among other things, to a finding of physical neglect against Mother, the return of custody of the two girls to Mother, and to continued monitoring by DSS. After DSS stated the substance of the agreement on the record, the following exchange took place:

[DSS]: Additionally, Your Honor, I will add that [Father], who is accompanied by his attorney, has no objections to custody being returned to Mrs. Meek.

[Court]: What about a restraint as to his contact?

[DSS]: He is in agreement with that, as well, Your Honor.

. . .

[Court]: So he's not to have any contact with these children?

[Father's attorney]: No, sir.

. . .

[Court]: She understands she cannot have [Father] around these children?

[Mother's attorney]: Yes, she understands that.

The family court approved the agreement. However, the August 29, 2000, written order (Mother's Order) failed to include the directive that Mother keep the girls away from Father.

Subsequently, Mother informed the DSS case worker that she was pregnant with Father's child. As a result of contact between Father and the children, Mother signed a Voluntary Placement Agreement, agreeing to give custody of the two girls to DSS for a temporary period. The agreement provided that DSS "*may* petition the Family Court for custody of my child(ren) at any time it deems such action necessary or should continued placement be necessary beyond three (3) months." The agreement also provided that Mother could request the return of her children by informing DSS of her request fifteen days before the date she wished them returned, but DSS could petition the family court for an order preventing the return of the children if DSS believed it was in the best interest of the children.

The court finally held the merits hearing regarding Father on March 5, 2001. Neither Mother nor her attorney appeared at the hearing. In addressing Father's failure to stay away from the children, one witness testified that Mother told DSS she was pregnant by Father. At the end of the hearing, the family court found that Father placed the children in threat of harm of physical abuse and mental injury. The court further ordered that Father be entered in the child abuse registry. Finally, the family court granted DSS's request that the children remain in its custody.

On March 27, 2001, without a hearing, the family court issued an order amending Mother's Order. The amended order added two provisions. One stated that Mother understood that Father was not to have contact with the children, and another forbade Father from contacting them. It is not clear from the record when Mother was served with a copy of this order. The family court also issued an intervention order regarding Father (Father's Order) on April 11, 2001, finding that Father placed the children in threat of harm and that he should have no contact with the children. Father's Order did not address Mother's conduct or custody of the children.

On August 1, 2001, Mother sent a written request for the return of her children pursuant to the agreement she had signed with DSS. On August 8, 2001, without a hearing, the family court issued an amended Father's Order. The amended Father's Order provided that DSS should have continued temporary custody of the children because Mother failed to comply with a previous court order. Mother appeals from this order, arguing: (1) the family court lacked subject matter jurisdiction because DSS's complaint did not include the required statutory notices; (2) the family court lacked subject matter jurisdiction because the merits hearing was not held within the statutory time constraints; and (3) Mother was unlawfully deprived of her children and denied her constitutional due process rights because DSS failed to give her notice or a hearing regarding the amended orders.

## STANDARD OF REVIEW

In appeals from family court, the appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *McElveen v. McElveen,* 332 S.C. 583, 591, 506 S.E.2d 1, 5 (Ct.App.1998).

## LAW/ANALYSIS

## I.  SUBJECT MATTER JURISDICTION

Mother argues the family court lacked subject matter jurisdiction over the underlying proceedings because: (1) the initial emergency removal complaint lacked adequate statutory notices; and (2) her merits hearing was not held within the statutory time constraints.

## A.  COMPLAINT

Mother first claims the family court was divested of subject matter jurisdiction because the complaint for removal served on her did not contain the statutorily-required notices.

The family court has exclusive jurisdiction to hear matters concerning the abuse and neglect of children. S.C.Code Ann. § 20–7–736(A) (Supp.2001).[1]

---

1. Although we recognize this case arose in April 2000, we cite to the most current version of the Code throughout this opinion given no

DSS served Mother with a copy of the Complaint for the Ex Parte Order. The complaint identified the children, identified Mother and Father, and alleged there was probable cause to believe there existed a substantial threat to the children's life, health, or safety at the hands of Mother and Father. The complaint sought the emergency removal of the children from the parents' custody.

The General Assembly has required that certain notices be placed in petitions for removal:

> (D) Whether or not the petition for removal includes a petition for termination of parental rights, the petition shall contain a notice informing the parents of the potential effect of the hearing on their parental rights and a notice to all interested parties that objections to the sufficiency of a placement plan, if ordered, or of any recommendations for provisions in the plan or court order must be raised at the hearing. The notice must be printed in boldface print or in all upper case letters and set off in a box.
>
> . . .
>
> If the petition does not include a petition for termination of parental rights, the notice shall state: "At this hearing the court may order a treatment plan. If you fail to comply with the plan, you could lose your rights as a parent."

S.C.Code Ann. § 20–7–736(D) (Supp.2001). The complaint served on Mother did not contain any of the notices outlined in the statute. However, Mother did not complain about this failure before the family court.

Mother argues that although the family court has exclusive subject matter jurisdiction to hear cases involving child abuse and neglect, the court was divested of this jurisdiction when DSS failed to include the necessary notices in the complaint. It is clear that DSS failed to include the necessary notices. However, nothing in the statute purports to divest the family court of subject matter jurisdiction where the notice requirements are not met by DSS.

---

substantive amendments have been made to the pertinent statutes since this litigation began.

■ "Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *Pierce v. State*, 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000). DSS's failure to include the appropriate notices in the complaint for removal may have violated certain due process rights of Mother, but the failure did not deprive the family court of subject matter jurisdiction over the emergency protective removal proceedings concerning Mother's children. *See South Carolina Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 134–35, 538 S.E.2d 285, 288 (Ct.App.2000) ("The law provides the family court has exclusive jurisdiction over all proceedings involving the termination of parental rights. We are aware of no provision divesting the court of that jurisdiction based on alleged improper removal of a child.") (internal citation omitted).

Moreover, since the failure of DSS to include the necessary notices in the complaint for removal does not involve a question of subject matter jurisdiction, this issue should have been raised to the family court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (stating an issue cannot be raised for the first time on appeal).

## B. TIME LIMITS

■ Mother next argues the family court was divested of subject matter jurisdiction to hear this matter because the family court failed to hold the merits hearing within the statutorily required time limits.

DSS brought the emergency action to remove the girls from Mother's custody on April 20, 2000. The family court held a probable cause hearing on April 24, 2000, and scheduled the merits hearing for May 24, 2000. On this date, DSS notified the family court that a guardian ad litem had not been appointed. The family court issued an order continuing the matter for this reason. The order specified that the thirty-five-day time limit had been waived. Nothing in the record indicates whether Mother appeared before the family court on May 24, 2000, or whether she agreed to waive the thirty-five-day time limit. Mother's merits hearing was held on August 2, 2000. Mother entered into an agreement with DSS at the hearing and did not object to the timing of the hearing.

The General Assembly has provided strict timelines for hearings on the removal of children. "The family court shall schedule a probable cause hearing to be held within seventy-two hours of the time the child was taken into emergency protective custody." S.C.Code Ann. § 20–7–610(M) (Supp. 2001). Further, the merits hearing "to determine whether removal of custody is needed, pursuant to Section 20–7–736, must be held within thirty-five days of the date of receipt of the removal petition." *Id.* A continuance may be granted for exceptional circumstances, however, "the hearing on the merits must be completed within sixty-five days following receipt of the removal petition" if a continuance is granted. *Id.* Section 20–7–736 also provides that the family court shall "schedule a hearing to be held within thirty-five days" of the date of receipt of the removal petition. S.C.Code Ann. § 20–7–736(E) (Supp.2001).

In reviewing the time limits outlined by statute, our Supreme Court has stated that the family court "must strictly comply with this schedule of hearings. The family court should order custody be returned to the child's parent or legal guardian if the hearings are not held within ten days after the statutory time limits." *Hooper v. Rockwell,* 334 S.C. 281, 289, 513 S.E.2d 358, 363 (1999).

More recently, in *South Carolina Dep't of Soc. Servs. v. Gamble,* 337 S.C. 428, 523 S.E.2d 477 (Ct.App.1999), this Court reviewed the time limits described in the removal statutes. Gamble's minor child was removed from her home and placed into emergency protective custody after a report of suspected abuse. The family court scheduled the merits hearing for September 15, thirty-two days after the petition for removal was filed. However, on the day of the scheduled merits hearing, the family court determined the matter could not be concluded during the allotted time and ordered that the matter be rescheduled. Thereafter, Gamble requested and received an order allowing discovery. The merits hearing was held on November 5, but was not concluded. Gamble then moved to vacate the order granting custody to DSS because the merits hearing was not held within thirty-five days of the receipt of the removal petition. The family court granted Gamble's motion to dismiss for failure to prosecute, and DSS appealed. This Court compared the requirement from section

20–7–610(M) that the merits hearing "must be held" within thirty-five days of receipt of the removal petition with the requirement found in section 20–7–736(E) that the family court "shall schedule a hearing to be held within thirty-five days" of receipt of the petition for removal. Reading the two statutes together, this Court held:

> [T]he plain language of the statute indicates that a merits hearing must be *scheduled* to be held within thirty-five days of receipt of the removal petition. The statute does not indicate that the hearing must be *completed* within the thirty-five day period. Therefore the requirement that a hearing on the merits actually come to a conclusion within thirty-five days of the removal petition should not be read into the statute.

*Gamble,* 337 S.C. at 432, 523 S.E.2d at 479.

Mother argues the family court lost subject matter jurisdiction as a result of the failure to abide by the time limits mandated by statute. As previously discussed, the family court is given exclusive jurisdiction over matters concerning the abuse and neglect of children. Although the statutes outlining the time limits for the merits hearing indicate that a hearing should at least have been scheduled within thirty-five days, and completed within sixty-five days, of the receipt of the removal petition, nothing purports to remove jurisdiction over the abuse and neglect case if the hearing is not held within these time limits. The failure to complete the merits hearing within sixty-five days of receipt of the petition for removal did not deprive the family court of subject matter jurisdiction. As in *Gamble,* it is clear the family court complied with the statutes considering it originally scheduled the merits hearing to be held within thirty-five days of the receipt of the removal petition.[2] Moreover, the remedy for the failure to complete the hearing within the specified time limits was for Mother to petition for the return of her children or move to vacate the order granting custody to DSS. Mother did not

---

2. However, as noted, the merits hearing was not completed within sixty-five days. Thus, it is not clear that the family court complied with the statute in this regard. We make no ruling on whether the failure to complete the hearing within this time limit violated the statute in this case. Our ruling is limited to whether the time-limit discrepancies deprived the family court of subject matter jurisdiction.

pursue either action and did not raise this issue to the family court.[3]

## II. DUE PROCESS VIOLATIONS

■ Mother argues her due process rights were violated and she was unlawfully deprived of custody of her children when the family court entered an amended order without giving her notice or opportunity to be heard.

■ "Due process is a flexible concept, and the requirements of due process in a particular case are dependent upon the importance of the interest involved and the circumstances under which the deprivation may occur." *South Carolina Dep't of Soc. Servs. v. Beeks*, 325 S.C. 243, 246, 481 S.E.2d 703, 705 (1997). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* Litigants should be placed on notice of the issues that the court is to consider in order to comply with due process. *Murdock v. Murdock*, 338 S.C. 322, 333, 526 S.E.2d 241, 248 (Ct.App.1999) (finding family court erred in addressing issue of debt allocation where the husband did not receive notice that the issue would be addressed at the hearing on a rule to show cause for failure to pay child support).

The family court determined the merits of the abuse allegations against Mother at the August 2, 2000, hearing. The parties clearly indicated that the agreement reached at the hearing dealt only with Mother and that the merits of the abuse allegations against Father would be dealt with at a later hearing. The Voluntary Placement Agreement (VPA), dated January 31, 2001, between DSS and Mother indicated that DSS would petition the family court if it believed it necessary to seek further determinations regarding custody of the children. This indicates a formal process, with notice to interested parties, would be undertaken before a determination would be made on the custody of the children.

---

3. Because the family court's compliance with the statutory time limits is not an issue of subject matter jurisdiction, Mother should have objected to the continuance to preserve the issue for appellate review. *Joubert v. South Carolina Dep't of Soc. Servs.*, 341 S.C. 176, 534 S.E.2d 1 (Ct.App.2000).

However, DSS did not apprise Mother that it would request a finding against her or request the family court for continued custody of the children at Father's merits hearing on March 5, 2001. The family court issued Father's Order on April 11, 2001. This order included no findings concerning Mother or custody of the children. After Mother followed the procedure outlined in the VPA to request custody of her children, Father's Order was amended to continue custody with DSS based on Mother's violation of a previous court order.[4] DSS argues the family court was merely correcting "clerical errors" by adding information discussed at Father's hearing but not included in the order. There is no merit to this argument where the "correction" goes to the very heart of the violation of Mother's fundamental right to due process.

Mother's interest in the custody of her children is extraordinarily significant. Mother's fundamental right to due process entitled her to notice that DSS intended to petition the family court for custody of the children at Father's hearing. *Murdock*, 338 S.C. at 333, 526 S.E.2d at 248. Moreover, DSS failed to follow its own procedures outlined in the VPA. Pursuant to the VPA, DSS should have petitioned the family court to prevent the return of the children upon Mother's request. Because DSS failed to follow the procedures outlined in the VPA, and failed to give Mother notice and an opportunity to be heard at Father's merits hearing, we reverse that portion of the amended Father's Order which grants custody of the children to DSS based upon Mother's conduct. We remand this matter to the family court for a full hearing to determine whether DSS is entitled to custody of the children beyond the time limits agreed upon by the parties in the VPA.

## CONCLUSION

Based on the foregoing, the portion of the amended Father's Order addressing custody of the children and Mother's conduct is **REVERSED** and **REMANDED** for proceedings

---

4. Presumably, Mother violated the amended Mother's Order prohibiting contact between Father and the children. DSS was aware of this violation at the time the parties executed the VPA. Thus, it is questionable why DSS sought an amended Father's Order continuing custody of the children with DSS based on this violation.

consistent with this opinion. A hearing on these issues shall be held immediately.

**REVERSED AND REMANDED.**

ANDERSON and STILWELL, JJ., concur.