THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Anderson County Department of Social Services, Respondent,
 v.
 Mother, Father, and Maternal Grandfather and his wife, Defendants,
 Of Whom Mother is the Appellant.
 In the Interest of the child, DOB 2/17/06.
 
 
 

Appeal From Anderson County
Timothy M. Cain, Family Court Judge
Unpublished Opinion No. 2007-UP-356
Submitted July 2, 2007  Filed July 24, 2007
AFFIRMED

 
 
 
 Hugh Wingo Welborn, of Anderson, for Appellant. 
 
 Dottie C. Ingram, of Anderson, for Respondent.  
 
 Amy Marie Parker, of Greenville, for Guardian Ad Litem.
 
 
 

PER CURIAM:  Mother appeals the family courts finding that she neglected the child.[1]  We affirm.[2] 
 
FACTS
On April 30, 2006, Father cared for the infant child while Mother showered.  Father yelled for Mother, saying the child was blue from the waist down.  Mother loosened the childs diaper in case it was too tight.  The child was fussy following the incident and needed to be constantly held.  He also had a red mark on his face.  Father indicated the mark likely came from Father putting the child against Fathers chest, resulting in his cheek hitting Fathers collar bone.  Mother later contacted her mother, who was a registered nurse, and she instructed Mother to take the child to the hospital. 
 
The following day, Grandmother saw the childs pediatrician at the hospital.  She asked the doctor if Mother had brought the child in to see her.  Grandmother mentioned the blue coloration on the childs legs.  That night, Mother called the doctors after-hours number.  Mother finally brought the child to see the doctor the following day, two days after the incident. 
 
According to the doctor, the only visible injury was the red mark on the childs face.  However, the child was still fussy when the doctor examined him.  Following x-rays, the child was diagnosed with multiple leg fractures and a rib fracture.  The doctor, who testified as an expert, determined the injuries resulted from non-accidental trauma.  
 
Additionally, the doctor testified regarding her previous experiences treating the child.  The doctor first saw him when the child was five days old.  The doctor began treating him for reflux with medication when he was four weeks old.  Reflux causes children to cry and display signs of discomfort.  The childs reflux medication lessened his fussiness. 
 
The doctor also testified she found a mark on the childs foot during an earlier checkup, but no broken bones were revealed by an x-ray.  She also testified Mother has done everything requested of her, attended all appointments, and asked appropriate questions.  
 
Following the discovery of the childs bone fractures, the Department of Social Services placed the child with Grandmother and allowed Mother to stay with her also.  Father did not attend his scheduled appointment with the department.  By telephone, Father told the department that either Mother or Grandmother caused the childs injuries.  The child currently is in the care of Mothers father (maternal grandfather) and his current wife.  They both testified the child is thriving in their care.  Mother visits the child often, and the department developed a treatment plan for Mother. 
 
The guardian ad litem reported the childs needs are being met at the maternal grandfathers home.  The guardian testified she believes the parties involved know more about the situation than they are saying.  The guardian does not believe Mother hurt the child.  Mother and Grandmother each briefly testified and asserted their Fifth Amendment privilege against self-incrimination.  Father did not appear at the trial. 
 
The family court found by a preponderance of evidence that Father abused and Mother neglected the child.  These findings were entered into the Central Registry for Child Abuse and Neglect.  The maternal grandfather and his wife were given legal custody and retained physical custody of the child.  The family court adopted the departments treatment plan requiring Mother to submit to evaluations, take classes, provide child support, and understand the importance of providing for the childs physical, medical, and educational needs. 
 
STANDARD OF REVIEW
In appeals from family court, the appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence.  S. C. Dept of Soc. Servs. v. Meek, 352 S.C. 523, 528, 575 S.E.2d 846, 848 (Ct. App. 2002).  However, this court is not required to ignore that the family court was in a better position to evaluate witness credibility and assign weight to testimony.  Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996).
LAW/ANALYSIS
Mother argues that the family court erred in finding Mother neglected the child by the preponderance of the evidence.  We disagree.
Section 20-7-736(F) of the South Carolina Code (Supp. 2006) states:

 The court shall not order that a child be removed from the custody of the parent or guardian unless the court finds that the allegations of the petition are supported by a preponderance of evidence including a finding that the child is an abused or neglected child as defined in Section 20-7-490 and that retention of the child in or return of the child to the home would place the child at unreasonable risk of harm affecting the childs life, physical health or safety, or mental well-being and the child cannot reasonably be protected from this harm without being removed.

Section 20-7-490(2)(a) & (c) of the South Carolina Code (Supp. 2006) explains that child neglect occurs if the parent, guardian, or other person responsible for the welfare of the child:

 (a)  inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . [or]
 (c)  fails to supply the child with adequate food, clothing, shelter, or education as required under Article 1 of Chapter 65 of Title 59, supervision appropriate to the childs age and development, or health care though financially able to do so or offered financial or other reasonable means to do so and the failure to do so has caused or presents a substantial risk of causing physical or mental injury. . . .  For the purpose of this chapter adequate health care includes any medical or nonmedical remedial health care permitted or authorized under state law.

The family court heard testimony that a non-accidental trauma befell the child while Mother was in the shower.  Subsequently, Mother waited two days after discovering the childs legs were blue before taking the child to a doctor or hospital.  In addition, there existed other evidence of injury, including a red mark on the childs face and the child wanting to be held constantly.  Although Mother did bring the child to see the doctor two days following the trauma, we concur with the family court that even though Mother may have intended no harm to the child, a preponderance of the evidence shows Mother was neglectful in failing to obtain appropriate medical care.
 
AFFIRMED.
STILWELL, SHORT, and WILLIAMS, JJ., concur.

[1]  The names of the parties are deleted to conceal the minors identity.
[2]  We decide this case without oral argument pursuant to Rule 215, SCACR.