# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

South Carolina Department of Social Services,
Respondent,

v.

Kristian Scott and Brian Frank, Defendants,

Of whom Brian Frank is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2019-001084

———————

Appeal From Kershaw County
Michelle M. Hurley, Family Court Judge
Rosalyn Frierson-Smith, Family Court Judge

———————

Opinion No. 5957
Heard May 25, 2022 – Filed January 4, 2023

———————

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

———————

Katherine Carruth Goode and Foster Manly Mathews,
both of Columbia, for Appellant.

Megan Jeanine Katherine Meekins, of the South Carolina
Department of Social Services, of Columbia; and Scarlet
Bell Moore, of Greenville, both for Respondent.

———————

**LOCKEMY, A.J.:**  Brian Frank (Father) appeals two family court orders denying his motion to dismiss on subject matter jurisdiction grounds, finding he sexually abused his minor daughter (Child), and ordering his entry onto the Central Registry of Child Abuse and Neglect (Central Registry).  On appeal, Father argues the family court erred by (1) finding it had subject matter jurisdiction when the alleged abuse occurred in North Carolina; (2) qualifying a witness as an expert, limiting evidence, and admitting Child's hearsay statements; and (3) limiting evidence relevant to the parents' history and ultimately finding Father should be entered on the Central Registry.  We affirm in part, reverse in part, and remand for a new trial.

## FACTS/PROCEDURAL HISTORY

Child was born to Father and Kristian Scott (Mother) in 2012.  On November 14, 2017, the South Carolina Department of Social Services (DSS) filed a complaint for removal, alleging Mother and Mother's boyfriend, Robert Connell, abused or neglected Child and that Father also sexually abused Child while she was visiting him at his home in North Carolina.  By temporary order, Child was placed in the temporary custody of her paternal grandparents on August 24, 2018.

On September 5, 2018, the parties appeared before Judge Michelle Hurley, and Father asserted the action should be dismissed because the court lacked subject matter jurisdiction when the alleged abuse occurred in North Carolina.  Judge Hurley denied Father's motion to dismiss and determined South Carolina had exclusive and continuing jurisdiction because (1) South Carolina was Child's home state; (2) Mother and Child continued to reside in South Carolina; (3) Child had significant connections to South Carolina; (4) a custody order had been issued in South Carolina; and (5) a private action was pending in South Carolina.

On the merits, the parties appeared before Judge Rosalyn Frierson-Smith[1] in October 2018.  At trial, Father renewed his motion to dismiss for lack of subject matter jurisdiction, but the family court declined to change Judge Hurley's ruling.  DSS then moved pursuant to section 19-1-180 of the South Carolina Code (2014) to present Child's out-of-court hearsay statements.  DSS asserted that because Child recently turned six years old, her out-of-court statements should be admitted to protect her from having to testify about the alleged abuse in front of her claimed abuser.

In support of their section 19-1-180 motion, DSS presented pre-trial testimony from Elizabeth Creed.  Creed testified she was employed by Firm Foundations

---

[1] We refer to Judge Frierson-Smith as "the family court."

Counseling and Wellness as a licensed professional counselor associate. She indicated her undergraduate degree was in experimental psychology and her graduate degree was as an education specialist in counselor education with a concentration in marriage, family, and couples counseling. According to Creed, in order to become a licensed professional counselor associate, she underwent 750 hours of supervision and direct counseling. She also stated she received specialized training in trauma stemming from sexual abuse of children. Creed acknowledged she personally had not undergone peer review but was under the direct supervision of a licensed professional counselor who had been peer reviewed. She also indicated she was required to work under the supervision of a licensed professional counselor for two years, and she was less than a year into her supervision. Creed further acknowledged she had never testified in court, been qualified as an expert, or published any papers. DSS moved to qualify Creed as an expert in child counseling and trauma, and Father objected. The family court overruled the objection and qualified Creed as an expert in child trauma.

According to Creed, she began counseling Child on January 5, 2018. She explained that, in her opinion, she could not say for certain whether testifying in court would cause Child severe emotional trauma. However, she indicated "it is possible that she would experience severe emotional trauma from testifying." Creed clarified she believed "possible" meant "more likely than not." She stated appearing in a courtroom in front of strangers, family, people she did not know, and the potential perpetrator could be traumatizing for a child. Creed explained that based on Child's age, she believed having to relive the trauma in the courtroom would cause anxiety, excessive worrying, panic attacks, nightmares, and restlessness. She indicated she believed the same symptoms would arise if Child were to testify by video because she would be subject to cross-examination and forced to retell her story to people with whom she does not have a rapport. The following exchange then occurred:

> [DSS]: Okay. All right. So looking at the things that you said a six year old is likely to experience, do you believe that [Child] is likely to experience those same type of distress symptoms, as you put it?
>
> [Creed]: I think so.
>
> [DSS]: Do you think she is substantially likely to experience those?
>
> [Creed]: I do.

She further indicated that because Child had not seen Father in over a year, facing him in the courtroom could possibly add to her distress.

On cross-examination, Creed testified she was not aware of the family's background situation prior to these allegations. Father asked whether Creed was aware of the divorce proceeding between the parties, and DSS objected on the basis of relevancy and that the question was outside the scope of her expertise. Father responded that section 19-1-180(D)(4) includes any motive for Child to possibly falsify or distort the event. The family court sustained the objection, finding the questioning should be related to Creed's counseling expertise. The court further found that Creed already testified the family's background was outside the scope of her knowledge.

In response to Creed's testimony, Father called Michelle Gworski as a witness. Gworski testified she was the guardian ad litem appointed to the 2016 divorce action between Father and Mother. She indicated she sent a letter to the parties in June 2017 regarding the "deplorable" conditions she observed in Mother's home and stated Father subsequently filed a motion requesting primary custody of Child. Gworski explained that the day before the hearing on the motion, Mother told her Child reported abuse to Mother's sister, and they contacted the police. Gworski testified she did not talk to Child about the allegations until May of 2018, and she did not receive the results of the forensic report until a month later. She indicated Child's statements to her were consistent with the forensic report.

Prior to the family court's ruling on the motion, Father offered to waive his presence in the courtroom if Child would be allowed to testify. The family court rejected the offer and granted DSS's motion to admit Child's statements. The court relied on Child's age, the testimony presented about the substantial likelihood she would experience emotional trauma, and the testimony regarding the consistency of Child's statements. The family court further found there was not enough evidence to show a motive for Child to falsify or distort the event. As to trustworthiness of the statement, the court indicated the record showed the statement was based on Child's personal knowledge, more than one person heard the statement, Child provided a detailed account to Creed and used appropriate language for her age, and Child consistently recounted the statement to Gworski months later.

At trial, DSS requested the family court find Father sexually abused Child and enter him on the Central Registry; however, DSS requested the custody and visitation orders remain as they were in the private custody action. Mother expressly stated the "private case is ongoing, and—and active, and would control

the custody and visitation issue, so that would not be before [the family court] today."

Creed testified Child's foster parent brought her to therapy when she was five years old. She indicated the foster parent reported Child had issues adjusting to a new environment and exhibited sexualized behavior in the form of masturbating. According to Creed, she treated Child by using a trauma narrative to help her make sense of her adverse experience. Over Father's objection, Creed testified Child stated, "Brian [Father] licked my butt and my no-no" and appropriately identified the parts of her body.

Gworski next testified she conducted a home visit of Mother's house in June of 2017, where she found "deplorable" living conditions and observed Mother exhibit slurred speech. As a result, she wrote a letter expressing her concerns to Mother and Father's attorneys.

After Gworski learned of Child's abuse allegations, she visited Child at school. Child told Gworksi that Mother did not want the two speaking to each other, but Child said, "I'm going to anyway." Over Father's objection, Gworski indicated Child said "Brian [Father] had licked her no-no" and that she was told by him not to tell Mother. She testified Child recalled that the abuse occurred in Father's truck near a shed. Gworski explained Child subsequently asked her, "When can I see him again?" She stated she replied to Child that if Father hurt her, she could not see him, and Child said, "Oh, okay."

Mary Beth Camp, a caseworker for DSS, testified that after DSS received allegations of sexual abuse in this case, she contacted the family and referred Child for a forensic interview. She explained she did not believe Mother coached Child. Camp stated that DSS concluded the case by finding an indication of sexual abuse and substantial risk of sexual abuse against Father based on the disclosure made by Child during the forensic interview.

On cross-examination, Father asked Camp if, during her review of the case, she found any previous unfounded allegations of sexual abuse Mother made against Father. DSS objected, arguing the ability to use unfounded cases should be limited. Father responded the question went to Mother's motive to coach Child to make the allegations. However, Father then indicated he was happy to move on.

Melissa Klahre then testified she was a forensic interviewer and therapist at the CARE House of the Pee Dee. She explained she conducted a forensic interview with Child in this case, and Child disclosed "oral vaginal and oral anal penetration

by Brian [Father]."  She testified Child made appropriate identifications using anatomical drawings, and Child remained consistent throughout the course of the interview.

On cross-examination, Klahre admitted Child's disclosure was not in response to a direct question, but instead after she asked Child, "Do you have any questions for me?"  She testified she believed the statements were made almost immediately; however, the immediate disclosure did not necessarily raise a red flag for her. Klahre testified Child made the disclosure after she talked to Child about the room they were in and discussed introductory matters.  She stated it did not strike her as odd that Child started talking spontaneously because "every child discloses differently."

Mother testified that prior to the sexual abuse allegations, there was an ongoing action in family court between her and Father.  Father attempted to ask Mother about interactions between her and Gworski, but Mother's attorney objected to their relevancy.  Father responded that the question was relevant because it went to Mother's motive to potentially coach Child and the timing of the allegations.  The family court asked Father to repeat the question, and Father responded he would "move on."

Mother testified she took Child to the police to report the abuse before she received the papers from Father's attorney about the June custody hearing.  She indicated she previously made allegations against Father for abusing Child when Child was two years old because "she started acting different[ly]."  According to Mother, she called Child's grandparents to express her concerns about Child's behavior, but the grandparents responded "it was from her car seat."  Father then asked Mother if, prior to making those allegations, he paid for her car.  DSS and Mother objected to the question on the basis of relevancy.  The family court allowed Father "a little leeway" to continue his questioning.  Mother responded she could not remember how long after Father stopped making the car payments she made the allegations of abuse.

Father then asked Mother if she had ever accused Douglas Frank, Child's paternal grandfather, of sexual abuse.  DSS objected, and Father again responded the testimony was relevant to Mother's attempts to use allegations as leverage.  The court stated the question did not have "[a] very strong connection" but allowed Father to ask one question and instructed him to move on.

Mother testified her children call her boyfriend "Dad" because "he raise[d] them," and they call Father, "Brian."  Father asked whether he exercised visitation

regularly when it was court ordered. In response to an objection on the basis of relevancy, the family court stated the question appeared to get into the private custody action, and custody was not an issue before the court. Father argued everything was tied together because "if there's a finding against him there's no way he gets custody." The court sustained the objection. Mother then testified she recorded a video of Child making the statement and sent it to police in North Carolina but never heard from an investigator.

Mother testified that prior to Child alleging the abuse, she observed Child's behavior was different: she did not talk, stared out the window, and experienced anger. She indicated Child begged her not to force her to visit Father, and during one visitation exchange, she observed Child hit Father and try to run into the highway.

Father testified he was thirty-one years old and lived in North Carolina with his girlfriend and her two children, ages three and one. Father stated he delivered furniture for work and was in the military for nine years. He further explained he was medically retired and received an honorable discharge in 2013. According to Father, he learned of the abuse allegations from Gworksi the day before the hearing for him to obtain custody. He testified he did not sexually assault Child.

Father testified Mother previously made sexual abuse allegations against him, but the allegations were unfounded because he did not have contact with children at the time of the alleged abuse. Father was asked about the timing of the last allegation, and over DSS objection, Father indicated he stopped making payments on Mother's vehicle because she was not allowing visitation. He indicated the allegations in the current case did not arise until two or three days before the custody hearing, but Mother was served with the hearing documents ten days prior to the hearing. Father stated that due to the allegations and the outstanding DSS case, the court did not award him custody at that June 2017 hearing.

Father testified he had not seen Child since June 2017. He explained that after the allegations, the police contacted him, and he told them the allegations were the result of "a jealous mother that ha[d] a vendetta" against him. Father testified he told the police Mother used allegations of sexual assault in the past like "a playing card." He explained he fully cooperated with police and was not arrested.

At the conclusion of the hearing, DSS requested a finding of sexual abuse against Father and sought to have him placed on the Central Registry. In response, Father argued DSS failed to meet its burden of proving the allegations against him. He asserted that Child was only consistent because she repeated the phrase, "Brian

licked my no-no and my butt," and he questioned Child's immediate disclosure during the forensic interview. Father also asserted that law enforcement did not think he was guilty because they never arrested him. Finally, he argued the statement of a young child did not meet the preponderance of the evidence standard, and he was limited in presenting his case because he was unable to cross-examine Child to determine if Mother coached her.

The family court found Father sexually abused Child and should be entered onto the Central Registry. It further found Child should remain in therapy, and custody should be resolved by the private custody action. This appeal followed.

## ISSUES ON APPEAL

1. Did the family court err in denying the motion to dismiss on jurisdictional grounds?

2. Did the family court err in qualifying a witness as an expert, in limiting the evidence, and in granting DSS's motion to admit hearsay statements of the complaining witness, in lieu of Child testifying in court or by other means?

3. Did the family court err in limiting the evidence relevant to the parents' history and Mother's motive to influence Child to make false allegations of sexual abuse, and in ultimately finding that Father sexually abused Child and should be entered on the Central Registry?

## STANDARD OF REVIEW

The appellate court reviews decisions of the family court de novo. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). The appellate court generally defers to the findings of the family court regarding credibility because the family court is in a better position to observe the witness and his or her demeanor. *Id.* at 385, 391, 709 S.E.2d at 651-52, 655. The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence. *Id.* at 388-89, 709 S.E.2d at 653-54; *see also Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018) ("We observed [in *Lewis*] that de novo review allows an appellate court to make its own findings of fact; however, this standard does not abrogate two long-standing principles still recognized by our courts during the de novo review process: (1) a trial judge is in a superior position to assess witness credibility, and (2) an appellant has the burden of showing the appellate court that the preponderance of the evidence is against the finding of the trial judge.").

**LAW/ANALYSIS**

### A. Subject Matter Jurisdiction

Father argues the family court erred by denying his motion to dismiss for lack of jurisdiction because custody was not at issue and the alleged abuse occurred in North Carolina. He asserts the family court incorrectly applied the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[2] in determining the court had jurisdiction because it analyzed the issue as if the trial was a custody determination; however, the only issue was whether Father had sexually abused Child and should be entered on the Central Registry. Father contends the situation here is analogous to *South Carolina Department of Social Services v. Tran*, 418 S.C. 308, 792 S.E.2d 254 (Ct. App. 2016), when this court found the family court properly exercised temporary emergency jurisdiction but was without subject matter jurisdiction to enter the removal and termination of parental rights orders. He also argues DSS's own policies and procedures provide a mechanism for resolving the situation when the alleged abuse occurred outside of South Carolina. We disagree.

"Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 472 A.2d 21, 22 (Conn. 1984)). "A court without subject matter jurisdiction does not have authority to act." *Tran*, 418 S.C. at 314, 792 S.E.2d at 257.

"The family court is a statutory court created by the legislature and, therefore, is of limited jurisdiction. Its jurisdiction is limited to that expressly or by necessary implication conferred by statute." *State v. Graham*, 340 S.C. 352, 354, 532 S.E.2d 262, 263 (2000). "The family court has exclusive jurisdiction to hear matters concerning the abuse and neglect of children." *S.C. Dep't of Soc. Servs. v. Meek*, 352 S.C. 523, 528, 575 S.E.2d 846, 848 (Ct. App. 2002). Moreover, the family court has exclusive original jurisdiction over abuse and removal proceedings. S.C. Code Ann. § 63-7-1610(A) (2010).

> 'Child abuse or neglect' or 'harm' occurs when: (a) the parent, guardian, or other person responsible for the child's welfare: (i) inflicts or allows to be inflicted upon the child physical or mental injury . . . . [or] (ii) commits or allows to be committed against the child a sexual

---

[2] S.C. Code Ann. §§ 63-15-300 to -394 (2010).

offense as defined by the laws of this State or engages in acts or omissions that present a substantial risk that a sexual offense as defined in the laws of this State would be committed against the child.

S.C. Code Ann. § 63-7-20(6) (2010 & Supp. 2022).

The UCCJEA defines a child custody proceeding as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear." S.C. Code Ann. § 63-15-302(4) (2010).

> [A] court of this State which has made a child custody determination . . . has exclusive, continuing jurisdiction over the determination until:
>
> (1)     a court of this State determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or
>
> (2)     a court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State.

S.C. Code Ann. § 63-15-332 (2010).

We hold the family court properly determined it had jurisdiction over this abuse and neglect case. *See Lewis*, 392 S.C. at 386, 709 S.E.2d at 652 (explaining the appellate court reviews decisions of the family court de novo). First, the legislature has conferred jurisdiction over abuse and neglect cases in South Carolina to family courts. *See Graham*, 340 S.C. at 354, 532 S.E.2d at 263 ("The family court is a statutory court created by the legislature and, therefore, is of limited jurisdiction. Its jurisdiction is limited to that expressly or by necessary implication conferred by statute."); § 63-7-1610(A) ("The family court has exclusive jurisdiction over all proceedings held pursuant to this article."); § 63-7-

20(6) ("'Child abuse or neglect' or 'harm' occurs when: (a) the parent, guardian, or other person responsible for the child's welfare . . . (ii) commits or allows to be committed against the child a sexual offense as defined by the laws of this State or engages in acts or omissions that present a substantial risk that a sexual offense as defined in the laws of this State would be committed against the child.").

Second, we are not persuaded by Father's argument that the UCCJEA does not apply because "custody and visitation were not an issue." Although the family court may not have decided custody and visitation at trial, Father's entry on the Central Registry will affect Child's future custody and visitation determinations.[3] Moreover, there was a previous custody order over Child in the state of South Carolina. Thus, we hold the family court properly applied the UCCJEA in this case and found it had jurisdiction. *See* § 63-15-302(4) (explaining the UCCJEA defines a child custody proceeding as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, *neglect, abuse*, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear") (emphasis added).

Additionally, this case is distinguishable from *Tran* because this court held South Carolina did not have jurisdiction to make an initial child custody determination or modify a child custody decree from another state when the child's home state was Georgia, there was a custody order in Georgia, and the record contained no evidence to show Georgia declined jurisdiction. 418 S.C. at 317, 792 S.E.2d at 259. Here, Child's home state was South Carolina, there was a custody order in place in South Carolina, and there is no indication in the record that the state of South Carolina had declined jurisdiction over Child. *See* § 63-15-332 (explaining a South Carolina court which has made a custody determination retains exclusive and continuing jurisdiction until "(1) a court of this State determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or (2) a court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State"); *Anthony H. v. Matthew G.*, 397 S.C. 447, 451, 725 S.E.2d 132, 134 (Ct. App. 2012) ("The UCCJEA's primary purpose is to provide

---

[3] Father acknowledged this at trial when he argued, "[I]t's all tied together. And if this—this is left open to divert to the private action and if there's a finding against him there's no way he gets custody."

uniformity of the law with respect to child custody decrees between courts in different states.").  Moreover, this court is always mindful of a child's best interest, and the forensic interview, victim statements, and therapy all occurred in South Carolina.  Therefore, the family court properly found it retained continuing and exclusive jurisdiction over Child and this abuse and neglect action.

## B. Evidentiary Arguments

### i. Qualifying the Expert Witness

Father argues the family court erred by qualifying Creed as an expert in child counseling and trauma because she lacked experience.  He contends (1) she was only a licensed professional counselor associate; (2) she had not yet undergone peer review; (3) she worked under the supervision of a licensed professional counselor; (4) she had been a licensed professional counselor associate for only one year; (5) she had not published any papers; and (6) she had never testified in court or been qualified as an expert.  We disagree.

"Generally, the family court has the discretion to determine whether a witness has qualified as an expert, and whether his opinion is admissible on a fact in issue." *Edwards v. Edwards*, 384 S.C. 179, 186, 682 S.E.2d 37, 41 (Ct. App. 2009).  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Rule 702, SCRE.

We find the family court did not err by qualifying Creed as an expert in child trauma.  Creed testified she had an undergraduate degree in experimental psychology and a graduate degree in counselor education.  She also testified that she underwent 750 hours of supervision and direct counseling.  Moreover, she counseled Child.  Therefore, Creed possessed the specialized knowledge to assist the family court in determining a fact in issue.  *See* Rule 702, SCRE.  Although we acknowledge Creed had not completed her supervised training, testified in court, or published a paper, these assertions go towards the weight of her testimony and not the admissibility.  *See Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 399, 618 S.E.2d 903, 907 (2005) ("Defects in an expert witness' education and experience go to the weight, not the admissibility, of the expert's testimony.").

### ii. Limiting the Evidence

Father argues the family court improperly limited the evidence during the hearing on the section 19-1-180 motion. He contends that on cross-examination, he attempted to ask Creed whether she knew about the divorce proceedings, and the court sustained DSS's objection on the grounds of relevancy and scope. Father argues the previous question he asked—whether Creed was aware of the family's situation going on with the Child—was different from whether the witness had knowledge of the divorce proceedings. Therefore, he asserts the family court erred in excluding this line of questioning because it was relevant to the statutory factors to be considered before ruling on the motion. We agree.

A child's out-of-court hearsay statement may be admitted if the child is found to be unavailable to testify due to a "substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of videotaped deposition or closed-circuit television." § 19-1-180(B)(2)(a)(v). The child's statement also must be "shown to possess particularized guarantees of trustworthiness." § 19-1-180(B)(2)(b). "In determining whether a statement possesses particularized guarantees of trustworthiness under subsection (B)(2)(b), the court may consider . . . (4) any apparent motive the child may have to falsify or distort the event, including bias, corruption, or coercion . . . ." § 19-1-180(D).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina." Rule 402, SCRE.

We find the family court abused its discretion by limiting Father's cross-examination of Creed because evidence regarding Mother and Father's divorce was relevant to the trustworthiness of Child's statements. *See Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (explaining "a family court's evidentiary or procedural rulings" are reviewed "using an abuse of discretion standard"); *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004) ("An abuse of discretion occurs either when a court is controlled by some error of law, or where the order is based upon findings of fact lacking evidentiary support.").

Father's primary defense at the pre-trial hearing was that Mother coached Child to make the abuse allegations in order to succeed in the custody action. Father initially asked Creed whether she was aware of the background and the family's situation with Child prior to the allegations, and she said she was not. He then

asked whether she was aware of the divorce proceedings, and the other parties objected.  The second question was sufficiently different from the first and was relevant because one of the factors the family court may consider regarding trustworthiness is "any apparent motive the child may have to falsify or distort the event, including bias, corruption, or coercion . . . ." § 19-1-180(D)(4).  Therefore, we hold the family court abused its discretion by limiting Father's cross-examination of Creed regarding the divorce proceedings.

### iii.    Admitting Child's Hearsay Statements

First, Father argues the family court erred by admitting Child's hearsay statements because there was insufficient evidence to establish a substantial likelihood Child would suffer severe emotional trauma from testifying because Creed only testified that it was "more likely than not" Child would experience severe emotional trauma.  Second, Father asserts he needed to cross-examine Child about who may have influenced or coached her to make the allegations, and his counsel offered to have Father out of the room during questioning to allow Child to testify.  Third, Father contends the family court failed to make a specific finding as to the presence or lack of any apparent motive Child may have had to falsify or distort the event.  We agree.

We hold the family court abused its discretion by admitting Child's hearsay statements because the testimony elicited at trial was not sufficient to support the court's finding that Child was unavailable.  *See Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (explaining "a family court's evidentiary or procedural rulings" are reviewed "using an abuse of discretion standard").  In order to admit an out-of-court hearsay statement, the family court must find a child was unavailable to testify due to a "substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of videotaped deposition or closed-circuit television."  § 19-1-180(B)(2)(a)(v).

At the pre-trial hearing, Creed initially testified, "[I]t is possible that [Child] would experience severe emotional trauma from testifying."  When pressed by counsel, she further explained that possible meant "more likely than not."  Creed then described the different types of distress symptoms a six-year-old might experience from testifying and opined she thought Child was likely to experience the same sort of symptoms.  Creed was then asked, "Do you think she is substantially likely to experience those?" and she replied, "I do."  We hold this testimony did not provide evidentiary support for the family court to find there was a substantial likelihood that Child would suffer severe emotional trauma from testifying.  Therefore, we hold the trial court abused its discretion by finding Child was

unavailable to testify and admitting her hearsay statements based on the testimony presented at trial.

We are also concerned by the lack of credence given to Father's suggestion to waive Father's presence in the courtroom to allow Child to testify. We acknowledge Creed testified the courtroom experience could bring a child anxiety and it could be traumatizing for Child to appear in a courtroom in front of strangers, family, people she did not know, and the alleged perpetrator. However, in requesting the hearsay statements be admitted, DSS expressly argued Father could question the people he thought Child may have been coached by as a remedy. To the contrary, Father's situation was not remedied because the family court limited Father's scope of cross-examination in error.

### C. Limiting Evidence Regarding Mother's Motive and Entering Father on Central Registry

Father argues the family court improperly limited his defense by preventing him from presenting evidence of Mother's motives and efforts to manipulate the outcome of the litigation. We agree.

We hold the family court abused its discretion by limiting Father's cross-examination of Mother because evidence regarding Mother's motive to coach Child was relevant to facts in issue. *See Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (explaining "a family court's evidentiary or procedural rulings" are reviewed "using an abuse of discretion standard"). Here, the evidence against Father was Child's repeated statements to Gworski, Khlare, and Creed. Father's primary defense at trial was Mother allegedly coached Child to make the allegations and that Mother wielded abuse allegations in the past to accomplish her goals. Father's questions were relevant because the answers could make Father's defense more or less probable; thus, the family court erred by not allowing him to question Mother on the relevant evidence. Moreover, this limitation of questioning was particularly prejudicial because Father was not allowed to cross-examine Child regarding the allegations.

Father further argues the family court erred by finding he abused Child and entering him on the Central Registry because (1) the evidence showed Mother's propensity to make false allegations; (2) the timing of Child's allegation prior to the custody hearing was suspicious; (3) Child's disclosure of the abuse as soon as the forensic interview started was also suspicious; (4) Child's consistency in her statements was indicative of coaching; (5) Mother told Child not to speak with the

GAL; and (6) Child asked the GAL when she could see Father again shortly after disclosing the abuse.

"If the family court finds there is a preponderance of evidence the defendant physically or sexually abused or willfully or recklessly neglected the child, it must order the person be entered in the Central Registry of Child Abuse and Neglect." *S.C. Dep't of Soc. Servs. v. Wilson*, 352 S.C. 445, 451-52, 574 S.E.2d 730, 733 (2002). "'Preponderance of evidence' means evidence which, when fairly considered, is more convincing as to its truth than the evidence in opposition." S.C. Code Ann. § 63-7-20(22) (2010). The statutory proceeding is "a civil action aimed at protection of a child, not a criminal action geared toward punishing the defendant." *Beaufort Cnty. Dep't of Social Serv. v. Strahan*, 310 S.C. 553, 554, 426 S.E.2d 331, 332 (Ct. App. 1992).

As explained above, because we hold the family court erred by limiting the testimony on relevant evidence, we reverse the finding that Father sexually abused Child and his entry on the Central Registry and remand this case for a new trial.[4]

## CONCLUSION

To summarize the foregoing, we affirm the finding that the South Carolina family court retained jurisdiction over this action and hold the family court did not err by qualifying Creed as an expert witness. However, we hold the family court abused its discretion by limiting testimony on relevant evidence and finding Child was unavailable to testify. Accordingly, we reverse Father's entry onto the Central Registry and remand for a new trial in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**GEATHERS and HILL, JJ., concur.**

---

[4] We acknowledge Child consistently described the alleged abuse and exhibited issues adjusting to a new environment and sexualized behavior; however, we decline to address the merits of the issue.